FILED
2013 Apr-12 PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**VOLCANO ENTERPRISES, INC., *doing business as* VOLCANO 256, and DARYL WILLIAMS,**

**Plaintiffs,**

**vs.**

**THE CITY OF HUNTSVILLE,**

**Defendant.**

**Civil Action No. CV-13-S-505-NE**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Volcano Enterprises, Inc., doing business as "Volcano 256," and its owner, Daryl Williams, allege that defendant, the City of Huntsville Alabama, denied their application for a retail liquor license for use in the operation of an adult entertainment venue on the basis of race.[1] In a pleading styled "Petition for Writ of *Certiorari* to the City Council of the City of Huntsville, Alabama and Complaint Pursuant to 42 U.S.C. § 1981," plaintiffs request two forms of relief. First, plaintiffs bring a state-law petition for writ of *certiorari* to obtain judicial review of defendant's denial of the liquor license.[2] Second, plaintiffs assert a federal-law claim for racial

---

[1] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶¶ 1-22.

[2] *Id.* ¶¶ 23-26.

discrimination under 42 U.S.C. § 1981.[3] This action is before the court upon defendant's motion to dismiss the Section 1981 claim. Upon consideration, the court will grant the motion and dismiss the Section 1981 claim, but with leave to amend.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's

---

[3] *Id.* ¶¶ 27-31.

> liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II. FACTS AS ALLEGED

As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

> the facts set forth in the plaintiff's complaint are true. *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true"). Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc*., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

Plaintiff Daryl Williams is an African-American who owns and operates plaintiff Volcano Enterprises, Inc., and who intends to open an adult entertainment venue called "Volcano 256" at 4320 University Drive NW #A in Huntsville, Alabama.[4] Williams has twenty years of experience in owning, managing, and

---

[4] *Id.* ¶¶ 1-2.

operating comparable adult entertainment venues.[5] He has held retail liquor licenses in the State of Alabama for the past thirteen years without incident, suspension, or revocation.[6]

Before Williams purchased the premises at which he proposes to open Volcano 256, the premises were held by several white persons, and, were used for approximately thirty years to operate a "lounge, with entertainment" called the "Silver Dollar."[7] Because the Silver Dollar's use of the premises predated the Zoning Ordinances adopted by the City of Huntsville in 1989, that use was "grandfathered": *i.e.*, permitted despite any change in the zoning rules.[8] While the Silver Dollar remained in business, it was continually issued a retail liquor license by the City of Huntsville.[9]

The premises of the prospective Volcano 256 entertainment venue are currently located adjacent to an adult book store, a bar, and a state liquor store.[10] Williams intends for Volcano 256 to feature non-nude dancing, in which the breasts and bottoms of the dancers are covered.[11] Williams's business, plaintiff Volcano

[5] *Id.* ¶ 12.

[6] *Id.* ¶ 13.

[7] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶¶ 14, 19.

[8] *Id.* ¶ 14.

[9] *Id.* ¶ 19.

[10] *Id.* ¶ 18.

[11] *Id.* ¶ 14.

Enterprises, Inc., is health code-complaint, holds a proper business license, and has no history of legal or any other problems.[12]

As part of the process of opening Volcano 256, Williams obtained a retail liquor license for the premises from the State of Alabama Alcoholic Beverage Control Board.[13] After Williams received the license, Huntsville Police Sergeant Mark Roberts personally supervised the building code inspection and permitting of the premises: something that Roberts did not do for the Silver Dollar or adjacent businesses.[14]

Sergeant Mark Roberts then enlisted various Huntsville municipal departments to investigate the premises, and informed Williams that the premises did not comply with the City's building code.[15] Williams was, nevertheless, "assured that he would be issued his certificate of occupancy and allowed to operate his lounge as soon as he obtained the necessary permits, hired properly licensed contractors, and brought the premises up to code."[16] As a result of those representations, Williams spent in

---

[12] *Id.* ¶ 1.

[13] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶¶ 6-7.

[14] *Id.* ¶ 15. In the complaint, plaintiffs also refer to Huntsville Police Sergeant Mark Roberts as Sergeant Mark Walker and Officer Mark Roberts. *See id.* ¶¶ 8, 15-17. This court will refer to him as "Sergeant Mark Roberts," with apologies if that is not the individual's correct name.

[15] *Id.* ¶ 8.

[16] *Id.* ¶ 19.

excess of $80,000 on renovations and upgrades to the premises.[17] After consulting with the Huntsville City Department of Buildings and Permits, Williams obtained a Certificate of Occupancy.[18] Upon receiving the certificate, Williams faced one last hurdle: to secure a retail liquor license from the City of Huntsville.[19]

The license review committee of the Huntsville City Council was the first municipal body to review Williams's application.[20] No community members attended the meeting to voice opposition.[21] Even so, the license review committee denied the request.[22]

Williams properly appealed the decision to the Huntsville City Council, and informed the Council of the preceding facts surrounding his application.[23] Only Sergeant Mark Roberts raised objections to the granting of the license: something that he did not do when the premises previously were held by several white persons.[24] Nevertheless, Roberts did not present any specific facts connecting the nature of the

---

[17] *Id.* ¶¶ 9, 20.

[18] *Id.*

[19] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶ 9.

[20] *Id.* ¶ 10.

[21] *Id.*

[22] *Id.*

[23] *Id.* ¶¶ 11, 21.

[24] *Id.* ¶ 16.

proposed use to an increased number of police calls.[25] The Huntsville City Council denied Williams's appeal on December 6, 2012.[26] A white person was a granted a liquor license for an adjacent business during the same application period.[27]

## III. DISCUSSION

Title 42, United States Code, Section 1981 provides, in part, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).[28] Plaintiffs' complaint alleges that:

> The negligent, intentional, and/or malicious actions of the defendant which led up to and included the denial of the application for

---

[25] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶ 17.

[26] *Id.* ¶ 21.

[27] *Id.* ¶ 20.

[28] The statutory language now codified at 42 U.S.C. § 1981(a) was originally enacted as part of the Civil Rights Act of 1866. It was amended in minor respects in 1870, and recodified in 1874. *See Runyon v. McCrary*, 427 U.S. 160, 168-69 n.8 (1976); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436-37 (1968). Congress most recently amended the statute in 1991. Prior to that year, § 1981 contained only one paragraph, reading as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> the Alcoholic Beverage License were arbitrary and capricious, discriminatory on the basis of race and color, and in violation of 42 U.S.C. § 1981, resulting in damages to the plaintiffs.[29]

The United States Supreme Court announced in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), that 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* at 735. In accordance with *Jett*, the Eleventh Circuit has squarely held that § 1981 does not itself provide a remedy for redressing violations of that statute against state actors;[30] instead, § 1983 constitutes the exclusive remedial vehicle for asserting claims for monetary damages against state actors who (or which) allegedly violated the rights secured by § 1981, which was enacted in aid of the rights secured by the Fourteenth Amendment to the United States Constitution.[31] *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000).[32]

Defendant argues that, "[b]ecause the [City of Huntsville] is undisputedly a

---

[29] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶ 22 (emphasis supplied).

[30] Unlike § 1981, which explicates rights secured by the Fourteenth Amendment to the United States Constitution, § 1983 is not "itself a source of substantive rights, *but merely provides a method for vindicating federal rights elsewhere conferred*." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citations and internal quotation marks omitted, emphasis supplied).

[31] *See supra* note 28.

[32] *See also Rioux v. City of Atlanta*, 520 F.3d 1269, 1273 n.3 (11th Cir. 2008) (citing *Butts* for the proposition that § 1983 provides the exclusive remedy for redressing violations of § 1981 against state actors); *Johnson v. City of Tampa*, No. 8:11-CV-2372-T-33EAJ, 2012 WL 3243608, *4 (M.D. Fla. Aug. 9, 2012) (citing *Butts* to dismiss a § 1981 claim against a municipality).

state actor, yet plaintiffs have nonetheless sued it directly and solely under section 1981, their claim in Count II fails as a matter of law."[33] Plaintiffs "agree that section 1983 provides the appropriate remedy to vindicate a violation of section 1981 by a state actor," and "propose to amend the complaint to reference both sections 1981 and 1983."[34] Accordingly, this court must determine whether to dismiss plaintiffs' § 1981 claim with or without leave to amend.

**A. Whether Plaintiffs' Claim is Plausible on its Face**

Defendant's motion alleges that "the sum total of [plaintiffs'] allegations suggest nothing 'more than a sheer possibility' of race discrimination[.]"[35] Research reveals that multiple courts have permitted plaintiffs to litigate claims arising from the discriminatory denial of a liquor license. For example, in *Calhoun v. Alabama Alcoholic Beverage Control Board*, 705 F.2d 422 (11th Cir. 1983), an African-American couple who sought to open a social club applied for a restaurant liquor license and retail beer license. *Id.* at 423. One year after denying their request, the county granted the licenses to a white couple who sought to open a club/lounge at the same location. *Id.* at 424. The Eleventh Circuit reversed an order dismissing the

[33] Doc. no. 4 (Brief in Support of Motion to Dismiss), at 3 (alterations supplied).

[34] Doc. no. 6 (Response to Motion to Dismiss), at 1.

[35] Doc. no. 4 (Brief in Support of Motion to Dismiss), at 6 (alterations supplied) (quoting *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

plaintiffs' complaint, albeit on grounds of untimeliness. *Id.* at 425.

Likewise, in *Flores v. Pierce*, 617 F.2d 1386 (9th Cir. 1980), the plaintiffs sought a liquor license for a restaurant catering primarily to Mexican-Americans. *Id.* at 1389. The police chief, mayor, and city councilmen opposed their application, which delayed the issuance of the license until after the opening of the restaurant. *Id.* at 1388. In doing so, the defendants "deviated from previous procedural patterns," "adopted an *ad hoc* method of decision making without reference to fixed standards," based their decision "on reports that referred to explicit racial characteristics," and "used stereotypic references to individuals from which the trier of fact could infer an intent to disguise a racial animus." *Id.* The Ninth Circuit affirmed a judgment in the plaintiffs' favor. *Id.* at 1392.

Similarly, in *Quarterman v. City of Springfield*, 716 F. Supp. 2d 67 (D. Mass. 2009), the plaintiff was a self-described "Mulato[sic]/Bi-racial" person who owned a lounge catering predominantly to Hispanics and African-Americans, and who alleged that the city denied his application for a liquor license transfer on the basis of his race. *Id.* at 70. The district court denied summary judgment on the plaintiff's disparate treatment claim, holding that:

> Plaintiffs have produced evidence indicating that Defendants were more harsh in judging and punishing alleged violations of licensing-disclosure rules by [the lounge] than by similarly situated white-owned licensees.

> Plaintiffs have also produced evidence that suggests Defendants scrutinized [the lounge] more strictly than they scrutinized white-owned businesses applying for a liquor license transfer. These allegations are sufficient to suggest disparate treatment.

*Quarterman*, 716 F. Supp. 2d at 75.

Indeed, federal courts have even refused to dismiss complaints which alleged that the plaintiffs were targeted for the denial of a liquor license for reasons unrelated to race. *See Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995) (reversing the dismissal of an equal protection claim for the denial of a liquor license in which "the unequal treatment [was] alleged to have been the result solely of a vindictive campaign by the mayor") (alteration supplied); *see also Arrington v. Dickerson*, 915 F. Supp. 1516, 1526 (M.D. Ala. 1996) (holding that "clearly the plaintiff would be entitled to relief" if he could prove that a city councilman persuaded city officials to block his liquor license application in retaliation for the plaintiff's complaints about certain fees).

Here, plaintiff alleges that when the property located at 4320 University Drive NW #A was owned by white persons, Huntsville Police Sergeant Mark Roberts did not personally oversee the building code inspection and permitting of the premises, or oppose the issuance of a retail liquor license for use in the operation of a lounge

with entertainment at that location.[36] Thus, the white owners had no problems obtaining a liquor license over the course of approximately thirty years.[37] When the premises were purchased by an African-American, however, Roberts reversed his practice, and the City Council denied plaintiffs' application.[38] Based on the officials' alleged "deviat[ion] from previous procedural patterns," *Flores*, 617 F.2d at 1389 (alteration supplied), this court holds that plaintiff's claim of discrimination is plausible on its face.

**B. Whether Plaintiffs Must Identify an Impaired Contractual Relationship Upon Which their Claim is Based**

Defendant also argues that plaintiffs have failed to state a claim because they "have not identified any impaired contractual relationship upon which their claim is based."[39] Title 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . *and* shall be subject to like . . . licenses . . . of every kind, and to no other." 42 U.S.C. § 1981(a) (alteration and emphasis supplied). Thus, the plain

---

[36] Doc. no. 1-1 (Petition for Writ of *Certiorari* and Complaint) ¶ 15.

[37] *Id.* ¶ 19.

[38] *Id.* ¶¶ 15-16, 21.

[39] Doc. no. 4 (Brief in Support of Motion to Dismiss), at 6. To support its arguments, defendant's motion cites heavily to *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), which involved a contractual relationship between private parties, not a license issued by a state actor. *See id.*

language of § 1981 suggests that the right "to make and enforce contracts" is distinct from the right to "be subject to like . . . licenses." Plaintiffs need not establish the existence of an impaired contractual relationship to show that they were subjected to different licensing requirements.

## IV. CONCLUSION AND ORDER

For the reasons explained above, this court was prepared to grant defendant's motion, and to dismiss plaintiffs' § 1981 claim, but without prejudice and with leave to amend. As the foregoing order was being proof-read for the final time, however, plaintiffs filed an amended complaint, asserting plaintiffs' § 1981 rights under 42 U.S.C. § 1983. (*See* doc. no. 7.) Accordingly, defendant's motion to dismiss is DENIED as moot. Defendant is further directed to answer or otherwise respond to plaintiffs' amended complaint within seven days.

DONE and ORDERED this 12th day of April, 2013.

Lynwood Smith
United States District Judge